UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

|  |  |  |
|---|---|---|
| HARMAN MINING CORP., *et al.*, | ) ) ) | |
| Petitioners, | ) ) ) | |
| v. | ) ) ) | Nos. 11-1450 and 05-1620 |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR and GARY LOONEY, | ) ) ) ) ) ) | |
| Respondents, | ) ) ) | |

<u>OBJECTION TO APPLICATION FOR ATTORNEY'S FEES</u>

  Harman Mining Company and its insurer (collectively "Harman") hereby object to the application for attorney's fees submitted in the above case. Counsel seeks more than $26,000 in fees, claiming a rate of $300.00 per hour for Joseph Wolfe, $225.00 per hour for an associate, Ryan Gilligan, and $100.00 per hour for various legal assistants' time for work performed on this case. The hourly rates requested do not the market rates for attorneys practicing in southwestern Virginia and the number of hours claimed is not reasonable. The same issues presented in this fee petition with respect to these lawyers currently are pending before this Court in two cases: <u>Eastern Associated Coal Corp. v. Director, OWCP</u> [<u>Gosnell</u>], Nos. 11-2038 (L) and 11-2380, and <u>Bowman Coal Co. v. Director, OWCP</u> [<u>Bowman</u>], No. 12-1642. (4th Cir.). The following is submitted in support of Harman's position that if not denied or reduced, a ruling on this fee petition should be held in abeyance until a decision is issued in <u>Gosnell</u> or <u>Bowman</u>.

1.      Over the years, the Supreme Court often has articulated comprehensive rules for lower courts to apply in evaluating fee-shifting applications. These rules prohibit fee enhancement for contingency or risk of loss, and impose market criteria for determining an appropriate rate for attorneys entitled to a shifted fee. See, e.g., Perdue v. Kenny A, 559 U.S. __, 130 S.Ct. 1662 (2010); Burlington v. Dague, 505 U.S. 557 (1992). The market rate equation provides that an attorney should be compensated at the hourly rate paid to him by fee paying clients. If the attorney does not have personal historical billing rates, the applicable rate is the rate charged by similarly situated and experienced attorneys practicing in the relevant area of law in the community in which the attorney practices. Blum v. Stenson, 465 U.S. 886, 895 (1984). An appropriate hourly rate is not determined on the basis of prior fee-shifting awards that are not demonstrably based upon market proof. Dague, 505 U.S. at 564. The appropriate rate is then multiplied by reasonable hours expended. The fee applicant always has the burden of proving the applicable geographically based market rate, and the reasonableness of the hours expended. Blum, 465 U.S. at 895 n.11; Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). This calculus provides a presumptively correct fee for the attorney that is not easily overcome. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) ("Delaware Valley I"). Finally, this formula applies uniformly to the 170 or so fee-shifting statutes. See Hensley, 461 U.S. at 433 n.7.

2.      The petition in the instant case does not identify what fee-paying clients pay for these attorneys' services; it states only that the hourly rates requested are counsel's "customary rates for black lung" and are "reasonable for the region" based on the rates for the South and Mid-Atlantic regions listed in Altman & Weil's Survey of Law Firm Economics for 2006. Letter at 2. Counsel offers the following additional justifications:

- the "learning curve is high and the remunerative [sic] is very low and there are few new attorneys that go into Black Lung litigation" Letter at 1. See also id. at 2 ("This area of practice is very very limited and attorneys doing this are almost impossible to find.").

- the experience of counsel in the field. Letter at 1-2.

- the passion the attorneys share for the practice and their teaching efforts. Letter at 1.

- the low approval rate for black lung cases. Motion at 2.

- the complexity of the case. Motion at 2.

None of these subjective and unproven factors forms a proper basis for this Court to award the hourly rates requested.

   3. In determining the appropriate "reasonable rate," the Court must first turn to what fee-paying clients pay. Claimant's counsel already has recognized that the Altman & Weil survey is not a valid measure of counsel's market rate. See Claimant's Brief at 23, Gosnell, supra. See also Schwartz v. Sec. of Health & Human Servs., 73 F.3d 895, 908 (9th Cir. 1995) (rejecting use of surveys to identify market rate because "[t]hese surveys … told the district court nothing about the prevailing rate in [the relevant geographic market] for similarly qualified lawyers working on a similar type of case."); Smith v. Philadelphia Housing Auth., 107 F.3d at 226 (questioning whether a survey offered by plaintiff was "sufficiently reliable" when it did not differentiate among diverse areas of law); London v. Halter, 203 F. Supp. 2d 367, 369-70 (E.D. Tenn. 2001) (rejecting the Altman & Weil survey to calculate reasonable hourly rates because of the "socioeconomic diversity among the various states" included in each region, and failure to differentiate fees based on the type of work); Pacific West Cable Co. v. City of Sacramento, 693 F. Supp 865 (E.D. Cal. 1988)(rejecting reliance in survey to calculate counsel's reasonable hourly rate).

4.  Moreover, the one page from the Altman Weil 2006 Survey submitted by counsel is based on a limited response. Only 12 to 113 offices responded for 29 to 642 lawyers. This is hardly a valid sample. Nor does it support the rates requested here. It does not state what markets were considered in each region or where or in what specialty the attorneys or law firms who responded to the questionnaire practiced. Nor does the survey identify whether the rates are reported for sole practitioners or small firm lawyers in rural areas as opposed to large firm practices in urban areas. All that the chart discloses is that 99 offices in the South Atlantic region responded to the Altman Weil survey with respect to attorneys with 31 or more years of experience reporting rates for 363 attorneys. Even if southwestern Virginia or Norton, Virginia, where counsel practices, were included in statistics for the "South Atlantic region," the chart does not support the rates requested.

5.  Nor is the experience of these attorneys a basis for departing from the lodestar. See Milk Producers, Inc. v. Johanns, 400 F.3d 939, 950-51 (D.C. Cir. 2005) (concluding that "an attorney cannot be awarded enhanced fees under the "special factor" exception based solely on expertise the lawyer acquired through practice in a specific area of administrative law."); Estate of Cervin v. Commissioner, 200 F.3d 351, 354 (5th Cir. 2000); Hyatt v. Comm'r, 315 F.3d 239, 253 (4th Cir. 2002) (rejecting request for consideration of special expertise where counsel's expertise did not extend "beyond that which can and should be acquired by a reasonably competent attorney engaged in the practice of a legal specialty that he or she has chosen to become proficient in by diligent study and work."). The Supreme Court has noted also that experience is factored into the market rate and giving extra credit for it is double counting . Blum, 465 U.S. at 899.

6.  Likewise, the other rationales provided by counsel are not factors that translate into a market rate. The complexity of the litigation is not a reason to

award a higher than market hourly rate. If it is a factor, it may result in more hours being billed, but accounting for it in the hourly rate is double-counting as well. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 723-24 (1987). Nor is risk of loss properly considered in awarding fees in the context of a fee-shifting case. See Dague, 505 U.S. at 557. In any event, risk of loss can be minimized by carefully screening cases. There also is no legal support for counsel's argument that their "passion" for this area of law or teaching others should be considered in arriving at a reasonable hourly rate. Congress already accommodated lawyers who desire to pursue their "passion" for a particular area of law by permitting fee-shifting. See Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 955-56 (1st Cir. 1984) (finding the hourly rate claimed by a lawyer was not enhanced by his national reputation as a scholar or professor of constitutional law). Finally, the argument that it is difficult to attract counsel in this area is "blatantly insufficient" to justify the rates claimed, see U.S. Dep't of Labor v. Triplett, 494 U.S. 715, 723-24 (1990) (holding that anecdotal comments about the shortage of claimant's lawyers was not sufficient to establish an actual shortage of counsel, stating: "The impressions of three lawyers that the current system has produced 'few' lawyers, or 'fewer qualified attorneys' (whatever that means), and that 'many' have left the field, are blatantly insufficient to meet respondent's burden of proof, even if entirely unrebutted"). It also is not accurate or proved. And finally, that these are counsel's "customary rates for black lung" is not valid evidence of the prevailing market rates; the Supreme Court has rejected such proof as "circular." Dague, 505 U.S. at 564 ("looking to *that* 'market' for the meaning of fee shifting is obviously circular. Our decrees would follow the 'market,' which in turn is based on our decrees.").

7. Nor does the affidavit submitted by claimant's counsel support the hourly rates requested her. It certainly neither addresses nor supports the rate

claimed for Mr. Wolfe. Mr. MacDonnell also does not address what fee-paying clients pay for legal work, let alone federal black lung work or its equivalent. He relies on his own "billing" rate, but his work, like claimant's counsel, is all contingent. See MacDonnell Aff. at ¶3. Even so, the affidavit shows that other qualified attorneys claim lower rates to litigate black lung cases. Under such circumstances, Wolfe, Delph, and Gilligan cannot receive more. Coulter v. State of Tennessee, 805 F.2d 146, 148-49 (6th Cir. 1986) ("Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.").

8.   Finally, the rates that counsel were awarded in the past by other black lung adjudicators is not evidence of the market in the absence of proof that those other awards are based upon market rates. Although counsel believes that all he has to do to satisfy his burden of establishing the attorneys' "market rate" is cite to (and offer to produce) some past awards, as noted above, the Supreme Court has rejected the rates received in shifted fee cases as proof of the market. Nor does this Court's precedent permit a rate calculation based on past fee awards without an analysis of the underlying award to determine if it was based on a market analysis. See Westmoreland Coal Co. v. Cox, 602 F.3d 276 (4th Cir. 2010). Cox is not a road map for avoiding the fundamental lodestar rules. In fact, this Court in Cox rejected the rationales provided by counsel here. Prior awards--especially those that predate Cox,[1] are relevant only if those awards satisfy the market rate test. And counsel seeking to rely on prior awards bears the burden of proving that those awards are based on a market rate analysis. This Court's suggestion in Cox that "Wolfe could have submitted evidence of the fees he has received in the past, Cox, 602 F.3d at

---

[1]   Twenty of the thirty-five awards submitted by counsel here pre-date Cox.

290, has to be placed in context. The Court was not referring past fee awards, but to "what attorneys earn[ed] from paying clients for similar services in similar circumstances." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994). As the Court in Rum Creek added: "While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." Id. Cox confirms that a market analysis is required in order to rely on prior fee awards.

     9.    The absence of genuine proof, which could easily be obtained, can only mean that counsel cannot justify the rates they seek with market evidence. There is no doubt that black lung ALJs have awarded these aspirational rates in the past, but those awards are based on nothing other than the desire of those ALJs to pay counsel more than they could get from a fee-paying client because of a belief that the law is not generous enough when it comes to black lung claims. This belief does not justify judicial activism or the nullification by ALJs of uniformly accepted fee-shifting rules because they have personal views to express. See Perdue, 130 S. Ct. at 1676 (fees based on impression defeat "a major purpose of the lodestar method—providing an objective and reviewable basis for fees….").

     10.    The only true market evidence is either what fee-paying clients pay claimant's attorneys or what similarly situated attorneys earn in similar types of cases. Claimant's counsel has offered no such proof. The Commonwealth of Virginia passed legislation authorizing fee-shifting of "reasonable attorneys' fees" for employees who prevailed in litigation over wrongful discharge. The hourly rate approved by the Department of Employment Dispute Resolution Counsel for counsel outside Northern Virginia may not exceed $131. For attorneys practicing in Northern Virginia, the hourly rate may not exceed $158. See <http://www.edr.state.va.us/rules_six.htm> (last viewed Aug. 23, 2012). Black

lung litigation is mostly easy and routine and certainly not more intellectually demanding than a wrongful discharge case. See Blankenship v. Schweiker, 676 F.2d 116, 118 (4th Cir. 1982) ("The nature of disability cases is repetitive so that the ability and skill of a more experienced attorney would offset the number of hours put in by one who is not familiar with the applicable statutes and regulations."). Claimant's lawyers are not entitled to more than this in rural Virginia. This is consistent with a recent survey by the American Bar Association reviewing what lawyers earn in each of the counties in the country. The average earnings of lawyers in Wise County, Virginia, where counsel practices, are $106,220/year; the top 25% earn $135,830. http://www.abajournal.com/magazine/article/what_americas_lawyers_earn/> This does not equate to hourly rates of $300 or $225 or close to those figures.

11.     The rates requested here do not reflect any relevant market. By any valid measure, they are artificially inflate; counsel for claimant has not established that any of the prior awards of shifted fees cited are based upon a valid market rate analysis. Supreme Court precedent uniformly prohibits an award of shifted fees in the absence a true market rate evidence.

12.     Finally, Harman challenges the number of hours for which reimbursement is requested where, as here, counsel bills in quarter-hour increments, a practice condemned by virtually every court including this one. See Broyles v. Director, OWCP, 974 F.2d 508, 512 (4th Cir. 1992).

13.     Here, Wolfe billed 9.5 hours or $2,800 (38 entries at 0.25 hour apiece) to review one-sentence status reports. This review, if necessary at all, should have taken no more than a minute or a total of 0.7 hours. No fee paying client would pay for this excessively costly practice. To add insult to injury, Wolfe then billed another 1.5 hours for "extensive review of this file." See October 19, 2009 entry. The legal assistants billed the same quarter hour to review the same status reports that the

attorneys reviewed, with sometimes two legal assistants billed for reviewing the same report. See September 27, 2010 and October 4, 2010 entries; November 24, 2010 and December 13, 2010 entries; May 7, 2011 and May 11, 2011 entries; June 19, 2011 and June 23, 2011 entries. A quarter hour each is billed by Mr. Wolfe for a transmittal letter and appearance form on two separate occasions (June 12, 2005 and June 20, 2005), to review routine correspondence (June 14, 2005, June 17, 2005, June 24, 2005), or to send a letter asking Mr. Looney to make an appointment (June 14, 2005). Wolfe billed 0.5 hours to review the brief filed with this Court (and to send it to the claimant, a clerical task), but only after the brief was filed. See September 8, 2011 entry. Multiple quarter-hours were devoted to reviewing and calendaring the oral argument notice (November 18, 2011, December 1, 2011, January 1, 2012). Nor are Mr. Gilligan's charges reasonable. Gilligan billed 46.75 hours to draft and file a 7,000-word respondent's brief (the briefing was split with the Department of Labor). He then alleges another 38.5 hours to prepare for, present and travel to and from oral argument, including 11 hours for additional and unexplained "preparation" after the argument already had taken place. See January 25, 2012 entry.

14. Counsel's billing practices do not reflect even reasonable billing judgment and if billed to a fee paying client would most likely invoke an angry response and more likely a refusal to pay. These practices cannot be condoned under any fee shifting jurisprudence.

WHEREFORE, for the reasons set forth above, this Court should deny the petition for attorney fees for failure to establish a reasonable hourly rate for reasonable or necessary work. In the alternative, the court should find that $131 per hour is the reasonable rate for these attorneys, and should eliminate the charges for

duplicative or excessive billings.  If not reduced or denied, the Court should hold this matter in abeyance pending a decision in either <u>Gosnell</u> or <u>Bowman</u>.

            Respectfully submitted,

            <u>s/Laura Metcoff Klaus</u>
            Mark E. Solomons
            Laura Metcoff Klaus
            GREENBERG TRAURIG LLP
            2101 L Street, N.W., Suite 1000
            Washington, D.C. 20037
            (202) 533-2362

CERTIFICATE OF SERVICE

    I hereby certify that on August 27, 2012, copies of the foregoing Objection to Application for Attorney's Fees were served on the following parties electronically through the CM/ECF notification system:

>Helen H. Cox, Esq.
>Office of the Solicitor
>U.S. Department of Labor
>Suite N-2117
>200 Constitution Avenue, N.W.
>Washington, D.C. 20210
>blls-sol@dol.gov; cox.helen@dol.gov
>
>Joseph Wolfe., Esq.
>Ryan Gilligan, Essq.
>Wolfe, Williams & Rutherford
>P. O. Box 625
>Norton, Virginia 24273-0625
>jwolfe@wwrrlawfirm.com; rgilligan@wwrrlawfirm.com

                                        s/Laura Metcoff Klaus
                                        Laura Metcoff Klaus